NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0456n.06

Case No. 21-4167

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="2"></td></tr>
<tr><td style="padding-left:2em">Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE NORTHERN DISTRICT OF</td></tr>
<tr><td>RICHARD WITHERSPOON, JR.,</td><td>)</td><td>OHIO</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td style="padding-left:2em">Defendant-Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>OPINION</td></tr>
</table>

**FILED**

Nov 14, 2022

DEBORAH S. HUNT, Clerk

Before: SUTTON, Chief Judge; GRIFFIN and NALBANDIAN, Circuit Judges.

SUTTON, Chief Judge. Richard Witherspoon dropped off a vehicle at a car dealership for repairs. In the course of working on the car, a mechanic discovered narcotics and a gun in a hidden compartment of the vehicle. He notified the police. After their investigation and seizure of the contraband, a grand jury charged Witherspoon with violating federal drug-distribution and weapons laws. He pleaded guilty but conditioned his plea on the right to challenge the district court's rejection of his motion to suppress the evidence. We affirm.

I.

Witherspoon dropped off a maroon Chrysler Pacifica for repairs at the Ganley Chrysler Dodge Jeep Ram Dealership. The work order specified that the Pacifica was under warranty, had "loose rear suspension components," and needed a 23-point inspection. R.63 at 36. While working on the Pacifica, one of the car mechanics noticed that the driver's window did not work. As a matter of policy, if a Ganley mechanic finds a problem with a vehicle under warranty, he fixes it

without contacting the owner. The mechanic removed the door panel, revealing a compartment with a gun and a baggie of white powder inside. The mechanic notified the service manager, who called the police.

Sergeant Sean Allred went to the dealership. He looked at the Pacifica without "touching anything" and "observed the firearm and narcotics." R.63 at 12. He called in the narcotics team: Sergeant Brian Sara and Detective Mike Griffis. They too could "see clearly that there was a gun and what appeared to be narcotics inside the door panel" and a digital scale on the center console. R.63 at 27–29.

The narcotics team decided to apprehend Witherspoon. They collected the firearm and narcotics from the hidden compartment and left the scale on the console. Then they asked the service manager to reassemble the vehicle and to tell Witherspoon to pick up his car. The narcotics team staked out the dealership's parking lot. Using a description of his clothing, the narcotics team identified Witherspoon as he arrived, retrieved the Pacifica, and drove away. Within minutes, the officers stopped Witherspoon, arrested him, took the Pacifica to the police department, and searched it. They found the scale in the hidden compartment along with a new bag of narcotics.

A grand jury charged Witherspoon with two counts of possessing with intent to distribute heroin and fentanyl, one count of being a felon in possession of a firearm, and one count of carrying a firearm during a drug trafficking crime. He moved to suppress the evidence. The court denied the motion. Witherspoon conditionally pleaded guilty and received a 100-month sentence. Invoking the condition, he appeals the denial of his suppression motion.

II.

Witherspoon challenges four features of this search and seizure.

*The mechanic's removal of the door panel.* Witherspoon complains that the mechanic violated the Fourth Amendment's guarantee "to be secure . . . against unreasonable searches and seizures" when he opened the side door compartment. U.S. Const. amend. IV. But the guarantee limits "only governmental action," not the action of private citizens. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). The mechanic worked for a private car dealership, and his discovery of the contraband was not "fairly," or for that matter remotely, "attributable to the government." *United States v. Miller*, 982 F.3d 412, 422 (6th Cir. 2020) (quotations omitted). Triggering this sequence of events was Witherspoon's decision to take his car in for repairs, not anything the government did. That means the Fourth Amendment does not apply. *Burdeau v. McDowell*, 256 U.S. 465, 475 (1921).

It makes no difference that Witherspoon may have had a subjective expectation of privacy in the car's closed containers and that he never consented to the panel's removal. That merely shows that the *car dealership* undercut his expectation of privacy, not that the government did. "Whether those invasions were accidental or deliberate, and whether they were reasonable or unreasonable, they did not violate the Fourth Amendment because of their private character." *Jacobsen*, 466 U.S. at 115.

*Seizure of the contraband.* Witherspoon separately challenges the police officers' warrantless seizure of the car's drugs and gun at the dealership when they first arrived. The Fourth Amendment ordinarily requires officers to obtain a warrant before seizing someone's property. *Id.* at 113–14. But the plain-view exception to the warrant requirement covers this seizure. It applies when an officer occupies a legitimate vantage point, sees contraband whose "incriminating

3

character" is "immediately apparent," and the officer has "a lawful right of access to the object." *Horton v. California*, 496 U.S. 128, 136–37 (1990); *see United States v. Clancy*, 979 F.3d 1135, 1137 (6th Cir. 2020).

Recall the sequence of events. The manager of the car dealership invited the officers into the garage, where the Pacifica was parked with the driver's door open. The officers were "lawfully in a position from which to view the interior of the vehicle." *United States v. Galaviz*, 645 F.3d 347, 356 (6th Cir. 2011). They didn't need to touch anything to see the contraband. They "merely look[ed] at what [was] already exposed to view, without disturbing it," meaning they did not conduct a "'search' for Fourth Amendment purposes." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987); *see Clancy*, 979 F.3d at 1138. The incriminating location and character of the contraband also were apparent. Sergeant Allred believed the baggie of white powder was heroin or fentanyl based on his training and experience. The gun appeared next to the narcotics, linking it to criminal activity. Sergeant Sara testified that drug traffickers routinely use hidden compartments in vehicles, called "trap[s]," to store contraband. R.63 at 26.

Witherspoon pushes back, noting the Pacifica was parked at the dealership, leaving no time-based or mobility-based exigency for declining to get a warrant. All true, but all unhelpful to Witherspoon all the same. The venerable automobile exception to the warrant requirement permits a warrantless search of a vehicle if an officer has probable cause to believe it contains contraband. *Carroll v. United States*, 267 U.S. 132, 149 (1925); *California v. Acevedo*, 500 U.S. 565, 580 (1991). The seen narcotics and the gun provided probable cause that the Pacifica contained evidence of a crime. The automobile exception requires nothing more, and in particular it does not require a time-based or travel-based exigency. *Maryland v. Dyson*, 527 U.S. 465, 466–67 (1999) (per curiam). Keep in mind that mobility is not the only justification for the rule. So

too is "the pervasive regulation of vehicles." *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018) (quotations omitted). Hence the Supreme Court has upheld warrantless searches of cars even without a flight risk. *See, e.g.*, *Florida v. Meyers*, 466 U.S. 380, 382–83 (1984) (per curiam); *Michigan v. Thomas*, 458 U.S. 259, 261–62 (1982) (per curiam). That the officers could have obtained a warrant in this case ultimately makes no difference. *Dyson*, 527 U.S. at 466–67.

*Traffic stop and arrest.* Witherspoon separately challenges the traffic stop and arrest. Both of them qualify as seizures under the Fourth Amendment, to be sure. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). And both were warrantless, to be sure as well. But officers may stop a vehicle "without a warrant when they have probable cause to believe that the occupants have committed a crime." *United States v. Brooks*, 987 F.3d 593, 598 (6th Cir. 2021). Officers likewise may make a warrantless arrest when, "at the moment the arrest was made," they "had probable cause to make it." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The officers checked every box, as a brief reminder of what they knew confirms. Witherspoon dropped off the Pacifica. It contained a gun and suspected narcotics in a "trap" and a digital scale on the center console. The dealership's employees provided a description of Witherspoon's clothing. A person wearing those clothes retrieved the Pacifica and drove away. Based on this set of facts, the officers had probable cause to believe that Witherspoon had committed a crime. It follows that they could pull over the Pacifica and arrest Witherspoon without a warrant, both without running afoul of the Fourth Amendment.

But the officers could not be sure, Witherspoon points out, that he knew about the hidden contraband. But as the phrase suggests, "probable cause concerns probabilities, not certainties." *United States v. Lanier*, 636 F.3d 228, 234 (6th Cir. 2011). All available information indicated that Witherspoon controlled the Pacifica, creating a fair probability that he knew about its contents.

5

Plus, the digital scale, a form of drug paraphernalia, sat conspicuously on the center console. *See United States v. Montgomery*, 377 F.3d 582, 591 n.5 (6th Cir. 2004) (possessing digital scale can violate Ohio drug laws). The exposed scale created a fair probability that Witherspoon knew about the hidden contraband too. While the officers may not have had absolute certainty that Witherspoon was dealing drugs, they had ample information to stop and arrest him.

What of the reality that the officers removed the gun and drugs prior to the traffic stop, leaving no ongoing crime to prevent, no probable cause to serve as a premise for the stop, and no evidence of a new crime such as a traffic violation? None of this matters. The officers had probable cause of a past crime—indeed considerable evidence of a past crime—and that empowered them to pull Witherspoon over regardless of whether he had another gun or more drugs with him or whether he subsequently violated a traffic law. *See Brooks*, 987 F.3d at 598.

*Search of the vehicle.* A similar conclusion applies to the warrantless search of the Pacifica at the police department. The automobile exception, once again, validates it. *See Meyers*, 466 U.S. at 382; *United States v. Ross*, 456 U.S. 798, 825 (1982). The officers found a gun and narcotics in a hidden compartment in the Pacifica. And the officers left drug paraphernalia (the digital scale) on the vehicle's center console. In between retrieving the Pacifica and his arrest, Witherspoon moved the digital scale. All of this provided a fair probability that the Pacifica contained contraband, enabling a warrantless search of the vehicle at the police department. *See Dyson*, 527 U.S. at 467; *Collins*, 138 S. Ct. at 1670.

We affirm.