NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

OCT 10 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-403 |
| Plaintiff-Appellee, | D.C. No. 3:21-cr-00037-MMD-CSD-1 |
| v. | |
| EDUARDO ALVAREZ, JR., | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, District Judge, Presiding

Argued and Submitted September 15, 2023
San Francisco, California

Before: BOGGS,** S. R. THOMAS, and FORREST, Circuit Judges.

Eduardo Alvarez, Jr. appeals the district court's denial of his motion to suppress a handgun that police officers found in his friend Kristin Kalin's car following an investigatory stop. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.
** The Honorable Danny J. Boggs, Senior Circuit Judge of the United States Court of Appeals for the Sixth Circuit, sitting by designation.

1

We review de novo the district court's denial of a motion to suppress evidence. *United States v. Zapien*, 861 F.3d 971, 974 (9th Cir. 2017). We review the factual findings underlying the denial for clear error. *Ibid.*

We affirm. Because the parties are familiar with the factual and procedural history of the case, we need not recount it here.

1. Alvarez argues that the district court erred in determining that Deputy Kharrl had reasonable suspicion to justify an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny. Assuming, without deciding, that Kharrl did not have reasonable suspicion to justify an investigatory stop, the discovery of Kalin's warrant roughly six minutes into the encounter attenuated the illegality of the stop. *See Utah v. Strieff*, 579 U.S. 232, 243 (2016) (holding that evidence seized following an unlawful stop was admissible because the discovery of a valid warrant attenuated the illegal stop).

2. The district court did not err in determining that the stop was not unconstitutionally prolonged, and thus the eventual vehicle search was valid. Of course, Alvarez cannot argue that he had a reasonable expectation of privacy in Kalin's car. *See United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000). But he can, and does, challenge the lawfulness of his own detention. To show the district court erred in not suppressing the gun, Alvarez "must show that [discovering the evidence] was in some sense the product of his unlawful detention." *United States*

*v. Pulliam*, 405 F.3d 782, 787 (9th Cir. 2005) (cleaned up). To that end, Alvarez argues that the stop was unreasonably prolonged.

Though Kharrl certainly expanded the scope of his investigation after the initial stop, he did so reasonably as the facts on the ground evolved. A seizure's mission determines its tolerable duration. *United States v. Evans*, 786 F.3d 779, 785 (9th Cir. 2015). As soon as Kharrl learned of Kalin's outstanding warrant, his mission became to execute the warrant. *See Strieff*, 579 U.S. at 242 (noting that discovering a warrant compels an officer to make an arrest). Kharrl then had cause to prolong the stop to investigate further. *See Evans*, 786 F.3d at 788 ("[A]n officer may prolong a traffic stop if the prolongation itself is supported by independent reasonable suspicion.").

The events that transpired after Kharrl discovered the warrant were both logical and lawful. To execute the warrant, Kharrl had to ask for Kalin's identification to confirm her identity. *See Strieff*, 579 U.S. at 241. As Kalin rummaged in her bag to get her ID, Kharrl heard a loud and distinctive "clink," which in his training and experience implied drug paraphernalia. Roughly four minutes later, Kalin admitted that the sound came from a glass pipe. At this point, there was independent probable cause to search the car. *See Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999) (recognizing that police may search a car without a warrant if there is probable cause to believe that it contains evidence of drug activity).

3

The discovery of the gun was not the product of any unlawful detention of Alvarez. It was a product of independent probable cause—suspected drug activity and Kalin's outstanding warrant. Once Kharrl had this information, Kalin was not going to drive the car away before a search occurred. Neither was Alvarez, who did not own the car or even possess a valid driver's license. Even if Kharrl had allowed Alvarez to leave on foot, "the search of the car still would have occurred, and the gun would have been found." *Pulliam*, 405 F.3d at 787.

Accordingly, the district court did not err in denying Alvarez's motion to suppress. Kalin's warrant attenuated the connection between the arguably unlawful stop and the seized evidence, and the police found the gun after a lawful search that flowed from the discovery of the warrant.

**AFFIRMED.**